KENOSHA COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff-Appellant-Petitioner,

v.

Nels NELSEN and Judith Nelsen, Defendants and
Third-Party Plaintiffs-Respondents,

Bronson C. LA FOLLETTE, as attorney general, state of
Wisconsin, Third-Party Defendant.

Supreme Court

*No. 79–774. Argued January 5, 1981.—Decided June 2, 1981.*

(Also reported in 305 N.W.2d 924.)

For the petitioner the cause was argued by *Bernard R. Vash*, assistant corporation counsel, with whom on the briefs (in this court) was *Frank Volpintesta*, corporation counsel.

For the defendants and third-party plaintiffs-respondents there was a brief (in court of appeals) by *Terry L. Constant* of Kenosha, and oral argument by *Mr. Constant*.

HEFFERNAN, J.  This is a review of a decision of the court of appeals.[1]  We affirm.  The principal question presented is whether the lottery winnings by a stepparent (or parent) constitutes the acquisition of property contemplated in sec. 49.195, Stats. 1975,[2] which will

[1] 95 Wis.2d 409, 290 N.W.2d 544 (Ct. App. 1980).

[2] "49.195  **Recovery of aid to families with dependent children.** (1) If any parent at the time of receiving aid under s. 49.19 or at any time thereafter acquires property by gift, inheritance, sale of assets, court judgment or settlement of any damage claim, the county granting such aid may sue said parent to recover the value of that portion of the aid which does not exceed the amount of the property so acquired.  During the life of said parent, the 10-year statute of limitations may be pleaded in defense against any suit for recovery under this section; and if such property is his homestead it shall be exempt from execution on the judgment of recovery until his death or sale of the property, whichever occurs first.  Notwithstanding the foregoing restrictions and limitations, where the aid recipient is deceased a claim may be filed against

trigger the operation of the statute and require the recipient—parent or stepparent—to use the proceeds of those winnings to reimburse the county for AFDC payments.

We conclude that lottery winnings are not within the operation of the statute, and we affirm the decision of the court of appeals.

The facts show that, on May 22, 1975, Nels Nelsen won an Illinois state lottery in the amount of $300,000, which will be paid to him in instalments of $20,000 per year over a fifteen-year period. When the lottery tickets were purchased, Nelsen and his father agreed to split any possible winnings. Accordingly, the annual payment of Nels Nelsen's winnings amounts to $10,000.

On December 8, 1975, Nelsen married Judith Anderson, the mother of four children by her prior marriage to Robert Anderson. Because Anderson was delinquent in support payments for the children, they were depen-

any property in his estate and the statute of limitations specified in s. 859.01 shall be exclusively applicable. The court may refuse to render judgment or allow the claim in any case where a parent, spouse or child is dependent on such property for support, and the court in rendering judgment shall take into account the current family budget requirement as fixed by the U. S. department of labor for the community in charge of public assistance. The records kept by the county are prima facie evidence of the value of the aid furnished. Liability under this section shall extend to any stepfather whose family receives aid under s. 49.19 during the period he is a member of the same household, but his liability is limited to such period. This section does not apply to medical and health assistance payments for which recovery is prohibited or restricted by federal law or regulation.

"(2) Amounts may be recovered pursuant to this section for aid granted both prior to and after August 31, 1969; and any amounts so recovered shall be paid to the United States, this state and its political subdivisions in the proportion in which they contributed to the payment of the aid granted, in the same manner as amounts recovered for old-age assistance are paid.

dent and received AFDC. These payments continued after the marriage of Judith and Nels.

Although Nels Nelsen allegedly was informed by county authorities that he had no obligation to support Judith's four children, the county, upon learning of Nelsen's lottery winnings, which preceded the marriage, demanded repayment of AFDC disbursements for the period after the marriage when the children lived in Nels Nelsen's home. Upon Nelsen's refusal to pay, an action was commenced pursuant to sec. 49.195, Stats. Pertinent provisions of the statute are:

"**49.195 Recovery of aid to families with dependent children.** (1) If any parent at the time of receiving aid under s. 49.19 or at any time thereafter acquires property by gift, inheritance, sale of assets, court judgment or settlement of any damage claim, the county granting such aid may sue the parent to recover the value of that portion of the aid which does not exceed the amount of the property so acquired. . . . Liability under this section shall extend to any stepfather whose family receives aid under s. 49.19 during the period he is a member of the same household, but his liability is limited to such period. . . .

"(2) . . . ."

Although the pleadings are exceedingly murky, it appears that the issue on which the case was decided, and the issue which the parties deem to be controlling, was whether lottery winnings were encompassed within the purview of the statute.

The issue was raised by Nelsen's motion for summary judgment alleging that he "has not received or acquired any property by gift, inheritance, sale of assets, Court Judgment or settlement of any damage claim." The winning of $300,000 in the Illinois lottery was admitted.

Insofar as the record shows, the county did not file counter-affidavits and did not move to dismiss the mo-

tion for summary judgment.[3] The decision of the trial court, however, indicates that the county filed a brief in opposition to the motion. That brief (and Nelsen's brief in support of the motion) is not of record on appeal.

The trial court held that sec. 49.195, Stats, was specific in respect to the method of property acquisition which would subject the recipient to an obligation to repay the county for AFDC payments and that lottery winnings were not included in the statute. Accordingly, it granted the motion for summary judgment and dismissed the complaint. The court of appeals followed substantially the same reasoning, holding the statute was unambiguous. It stated, "The statute lists five specific ways of acquiring property. Lottery winnings are not within any of these methods." (pp. 414–15)

Because the statute was unambiguous, addressed itself to specific, defined types of acquisitions, and gave no indication that other types of acquisitions were intended to be within the class, the court of appeals concluded that the statute on its face did not include lottery winnings.

There is little that this court can add to the trial court or court of appeals analysis. Both are clearly correct.

---

[3] Sec. 802.08(3), Stats., provides in part:

"When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party."

By not filing anything in opposition to the motion, it could well be concluded that all facts were conceded and only a matter of law remained.

Sec. 49.195(1), Stats., itemizes the modes of acquisition which trigger liability for reimbursement under the statute. They are acquisition by gift, inheritance, sale of assets, court judgment or settlement of any damage claim.

The itemization is of the means or the methods of acquisition. It is apparent it is not exhaustive. Had it been the legislative intent to predicate reimbursement on the ability to pay, other forms of acquisition or sources of income or property would have been included. The county, however, makes the argument that the public treasury is not bottomless, and because it is in the interest of the public fisc that aid-payments of whatever nature should be repaid, the statute should be interpreted with that in mind.

It is clear, however, that this generalized public purpose could not have been in the mind of the legislature when it approved this statute. Had that been true, ordinary earned income would have been included, as well as interest on investments or savings. Not even all forms of windfall increments to assets as income are included, *e.g.*, fortuitous findings—treasure trove, rewards, or employees' bonuses are not included. There is no indication that the statute was intended to sweep broadly on the premise that reimbursement should depend on ability to pay. Nor was the scope of the statute made subject to expanded interpretation by any catch-all phrase which would trigger application of the *ejusdem generis* rule of statutory construction.

We assume that the legislature knew what it was doing when it enacted this statute. Were the statute subject to the unduly broad interpretation urged by the county, it might well be subject to attack on the ground that it failed to give notice of what types of acquisitions it attempted to encompass.

The hazards of open-ended, vague legislation of that type or legislation subject to the county's urged interpretation are illustrated by the facts of this case. Nels Nelsen, prior to his marriage to Judith, knew that the father of Judith's children was delinquent in his support payments. He knew that his lottery winnings would be paid for years to come. Hence, Judith and Nels specifically sought the counsel of an employee of Kenosha county for advice in respect to his liability for support because of his lottery winnings. He testified that he was told that the provisions of the statute did not subject those winnings to liability.[4] His conduct shows that he was aware of the statute and concluded, upon the advice of others, that his situation was not within the purview of the statute. His conclusion was correct, and the advice given him was correct. He had notice of the sweep of the statute and acted accordingly. The legislature may well have considered the problems that would ensue if the statute were made indefinite or of too broad or vague a sweep. The legislature acted wisely in its determination to enact a reimbursement statute that precisely defined the liability of those who might come within its scope and thus gave precise notice of potential liability.

The defendant has properly pointed out that the primary support responsibility rests upon the natural father. No provision of the common law has been cited which would place that obligation on a stepparent. The statute makes some alterations in the common law obligation of support, but, because it is in derogation of the common law, it must be given its plain meaning ac-

---

[4] The record indicates that Judith sought and received advice from her caseworker, Ms. Pacetti. This information is contained in the depositions of both Nels and Judith Nelsen. The depositions were specifically incorporated in the motion for summary judgment.

cording to its terms. A broader interpretation could only be given under circumstances where it is apparent that such was the intent of the legislature. The legislature could well have concluded that the reimbursement statute should be given broader scope, but it did not. This court, not finding any legislative intent to broaden the liability beyond the enumerated transactions cannot expand upon it.

The statute is plain on its face. It is unambiguous and not subject to interpretation or construction.

In the course of the proceedings, the income tax returns of Nels Nelsen were put into the record. These returns show that Nelsen, in addition to working for an employer, had an independent business devoted to the sales and service of outdoor power equipment. Although the county did not allege in its complaint that the sale of power mowers and other equipment constituted the "sale of assets" under sec. 49.195 (1), Stats., it is argued on this appeal that selling of inventory in the course of Nelsen's business constituted that mode of property acquisition. It is clear that it does not.

The sale of power mowers was the sale of stock-in-trade of a sole proprietorship. Nelsen's income was not from the "sale of assets," as that term is employed in the statute. Rather, it came from the operation of his business as a whole. The cost of his inventory was part of the cost of his business operations. The amounts paid upon the sale of his inventory constituted merely a part of his gross receipts, along with other receipts from personal services rendered in his repair business.

The end result of his private business venture—the property acquired as profits from his business—was ordinary earned income and was so reported upon his tax returns. He acquired no net property as the result of

selling his stock-in-trade. It is clear that sales in the course of his independent business did not result in the acquisition of property by a method contemplated in the reimbursement statute.

We also point out in passing that the tax returns for the two years in question show a business loss of over $4,000. We base our conclusion, however, not on the profitability or nonprofitability of the business, but rather on the fact that the legislature has not determined that this method of acquiring property or income should be within the sweep of the statute.

The statute is plain and unambiguous. Neither lottery winnings nor ordinary income derived from the operation of a business are subject to the provisions of sec. 49.195, Stats. No material facts were disputed in the proceedings on summary judgment. Only a question of law was presented and, as a matter of law, the complaint was properly dismissed. The court of appeals decision upholding the trial court's judgment of dismissal is affirmed.

*By the Court.*—Decision affirmed.